# JAMES W. KIMMEL *et al.*

*v.*

# JONAS 'HENRY.

1. MALICIOUS PROSECUTION. Where a party procured the arrest of the plaintiff on a peace warrant, and from his evidence on the examination it did not appear that he had any just fear of personal or other injury, but the whole of the facts showed that the arrest was not in good faith, but for the sinister purpose of getting the plaintiff's wife away from him; and that another party was acting with him in trying to get the wife away, so that the two were conspiring to have the arrest for an unlawful purpose: *Held*, that a verdict in favor of the plaintiff against the defendants for $250 must be sustained.

2. SAME—*advice of counsel no excuse, when.* Where the parties in such a case consulted an attorney-at-law prior to swearing out the warrant, who drew the complaint and prosecuted, but the evidence failed to show that the attorney was informed of the facts: *Held*, in view of the bad motive shown, that the advice of the attorney afforded no defense.

APPEAL from the Circuit Court of Mercer county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. PEPPER & WILSON, for the appellants.

Messrs. TALIAFERRO & BROCK, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case, in the Mercer circuit court, for malicious prosecution, and a count for abducting plaintiff's wife and children.

The jury found the defendants guilty of a malicious prosecution, and assessed the damages at two hundred and fifty dollars. A motion for a new trial was overruled and judgment rendered on the verdict, to reverse which the defendants appeal, one of them, Kimmel, claiming that he did not participate in any manner in the prosecution, and Mountz, the other appellant, claiming he had probable cause therefor.

Appellants' counsel have presented in their abstract only such parts of the evidence as seem to pertain to the malicious prosecution, whilst an inspection of the record itself shows the two charges to be inseparable, and presents a case of high-handed wrong and outrage against appellee, admitting of no excuse or palliation.

We have examined the evidence in the record, and are well satisfied from it that Kimmel had been taking liberties with appellee's wife, who was a sister of his co-appellant, Mountz, and was the principal cause of their troubles.

Appellee testifies he had quarrelled with Kimmel, with Mountz, and with his wife. He had worked for Kimmel in his mill, and his position became so uncomfortable he had sold off his property with the determination to leave the country and go with his family to Pennsylvania. He had taken them, a wife and three little girls, the oldest five years of age, to the house of a friend, a Mr. Daznoh, preparatory to the journey. While there, Kimmel's wagon, driven by his son, in which were four men, Mountz being one of them, about nine o'clock at night, came to the house, the children taken out of bed, and they, with their mother, carried in this wagon to Kimmel's house, where they remained several days, appellee during the time forbidden by Kimmel to see them after he had one interview with them.

To secure these parties from interruption by appellee, as the evidence tends strongly to show, Mountz, the same day, appeared before a justice of the peace and made oath he was afraid appellee would beat and wound him; that on the seventh of May, 1871, he assaulted and threatened to strike him, and that he was a man whom, he had reason to fear, would beat and wound him.

This affidavit was made on the 20th day of May, whilst appellee's family were at their friend's house, and the warrant put in the hands of a constable to be executed. Kimmel was in the town where the magistrate lived, on the day the warrant was sworn out, and on which appellee was arrested.

After Mountz made the complaint, the magistrate, Mr. Graham, had some conversation with him about it, and Mountz said "his whole object was to get the woman;" said he considered her abused by her husband, and would like to get her away from him. On being asked by the magistrate if Henry (appellee) could give bail, and who said if he could not he would have to go to jail, Mountz replied that was just what he wanted.

The trial did not take place until several days after the warrant issued.

Another witness, Buckholder, testified he was at Henry's sale, and had on that day a conversation with Mountz in which Mountz told him he had sworn his life on Henry; witness said he hoped he was not afraid of Jonas. Mountz replied, it was not that, but if he was arrested he (Mountz) would have a better chance to get Sarah away; he was looking for the constable all day. The sale was about the middle of the day. Kimmel said to this witness, Henry was to be arrested that day. This witness remained at Henry's place until he and his family left on Daznoh's wagon. Henry did not then know a warrant was out for him, but his wife did.

Underwood, the officer who arrested Henry, testified he arrested him between five and six o'clock in the afternoon of the day of his sale ; took him before 'Squire Graham, and he gave bail to appear on Monday morning. After the arrest, Kimmel said to him, he had better be careful about letting him go to supper by himself; that he might get into trouble. The officer did let him go to supper. Mountz and Kimmel were there together in front of Bassett & Connell's office. They said Henry was not to be trusted.

This testimony tends strongly to show a great interest on the part of Kimmel in this prosecution, and it is strengthened by the testimony of Mr. and Mrs. Daznoh, who relate the occurrences at their house on the night Mrs. Henry and the children were taken to Kimmel's in Kimmel's wagon. Mountz, from the wagon, called out to his sister to "hurry

up," and said Henry was coming over with weapons to raise a row.

Mountz said this, doubtless, to intimidate his sister, supposing all the time that Henry was in close custody, in jail, as he told the magistrate that was where they wanted him.

But Henry, being released on bail, did make his appearance as his wife was getting ready to leave in the wagon, and he said to her, "Now, Sally, don't do that; don't go away," but she persisted, and went to Kimmel's. Mountz insisted she should bring out the children.

The witness who speaks of this part of the transaction is Mr. Daznoh, and he further testified that Kimmel told him about the arrest; that he wanted to have Henry arrested so that he could get Mrs. Henry away, but he was afraid to undertake it, for fear Henry would make her many good promises, and the whole thing would fail. When she was taken away Kimmel told Mrs. Henry they had Henry where he would not hurt them.

This, we think, abundantly proves complicity on the part of Kimmel in the prosecution instituted by Mountz.

Now, let us see if there was probable cause for the prosecution.

This is the whole of it: Mountz testified he was boarding at Kimmel's, and went to Henry's to get ready for church; asked Henry if he could have some of his hair oil, and he got angry and Mountz left. Henry followed him out, making threats, and asked him if he intended to make trouble in his family, and Mountz said no. This is the occurrence as Mountz testified, and on the strength of it he made oath that Henry would injure him if he was not bound over to keep the peace. A witness, Hasbrook, testified, and so did Lona Kimmel, a son of appellant, that they remembered going to church with Mountz. Mountz stopped at Henry's and went into the house, and soon after came out, and Henry followed him, shaking his fist at Mountz, and said he would fix him when he came back.

It is evident Mountz did not see this hostile act of Henry, for he says nothing about it in his testimony. Shaking the fist behind one's back, and not in striking distance, is not a very terrifying act, and hardly sufficient to justify the man, who did not see it, in "swearing the peace" against the perpetrator.

No, it was all a pretense, as the evidence fully shows. He wanted to get Henry in jail, and, while he was in durance, get his wife away from him. That was his "whole object." This he acknowledged to the magistrate and to Jacob Buckholder.

The jury had a right to believe the prosecution was not in good faith, and for a laudable purpose. That Kimmel was "act and part" in the transaction, there can be no doubt from the testimony.

The fact that Mountz consulted a lawyer who prepared his affidavit, and prosecuted on his advice, would be an apology for him if the case was not so full of bad motive. If he told all the facts to his lawyer, we can only say he did not happen to choose a wise counselor. But Mountz does not testify he communicated to his lawyer any of the facts, nor did he establish it on the trial.

The court put the case fairly to the jury by the instructions, and appellants may be thankful the jury did not visit them with a more severe infliction.

We can not disturb this verdict. The evidence fully sustains the finding. There was no cause for the prosecution. It was not made in good faith.

The judgment must be affirmed.

*Judgment affirmed.*